UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CASA M. MARSHALL,<br>    Plaintiff,<br><br>v.<br><br>G. E. MARSHALL, INC.; M5, Inc.; MBIP, LLC;<br>Tower Road, LLC; Joliet Road Properties, LLC;<br>CRCFR Properties, LLC; FRANK A. MARSHALL,<br>individually and in his official capacity as an officer,<br>director and/or shareholder of G.E. Marshall, Inc., M5,<br>Inc., MBIP, LLC, Tower Road, LLC, Joliet Road<br>Properties, LLC, CRCFR Properties, LLC, and<br>as a beneficiary of the Glen E. Marshall Marital Trust;<br>CLINTON E. MARSHALL, individually and in his official<br>capacity as an officer, director and/or shareholder of<br>G.E. Marshall, Inc., M5, Inc., MBIP, LLC, Tower Road,<br>LLC, Joliet Road Properties, LLC, CRCFR Properties,<br>LLC, and as a beneficiary of the Glen E. Marshall<br>Marital Trust; ROGER W. MARSHALL, individually<br>and in his official capacity as an officer, director<br>and/or shareholder of G.E. Marshall, Inc., M5, Inc.,<br>MBIP, LLC, Tower Road, LLC, Joliet Road Properties,<br>LLC, CRCFR Properties, LLC, and as a beneficiary of<br>the Glen E. Marshall Marital Trust; ROSS J. MARSHALL,<br>individually and in his official capacity as an officer,<br>director and/or shareholder of G.E. Marshall, Inc.,<br>M5, Inc., MBIP, LLC, Tower Road, LLC, Joliet Road<br>Properties, LLC, CRCFR Properties, LLC, and as a<br>beneficiary of the Glen E. Marshall Marital Trust;<br>Mrs. Marie Marshall, as Trustee of the GLEN E.<br>MARSHALL MARITAL TRUST, and KAREN<br>MARSHALL, as beneficiary of the Glen E. Marshall<br>Marital Trust,<br>    Defendants. | Cause No. 2:09-cv-198 |

OPINION AND ORDER

The matter is before the court on the Motion to Disqualify Counsel, Kreig [sic] Devault, LLP [DE 44] filed by the plaintiff, Casa Marshall, on April 27, 2010. For the following reasons, the motion is **DENIED.**

Background

On June 16, 2009, Casa Marshall filed her Complaint in the Porter County Superior Court against G.E. Marshall, Inc., and other individuals and corporations. Casa is alleging violations of Title VII of the Civil Rights Act based on gender, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Family and Medical Leave Act of 1993, as well as claims alleging breach of fiduciary duty and breach of duty of good faith and fair dealing. On July 13, 2009, this case was removed to this court.

G.E. Marshall is a family owned business where Casa had worked since 1974. Since 2003, Casa was the only female corporate officer, director, and minority shareholder of G.E. Marshall. Casa had the authority to sign all contracts on behalf of the corporation. During Casa's employment she had contact with G.E. Marshall's legal counsel, J. Brian Hittinger, who was working for the law firm, Hoeppner Wagner & Evans, LLP.

From 2003 to 2008, Hittinger, while working for Hoeppner and representing G.E. Marshall and M5, Inc., advised G.E. Marshall on various legal matters related to the corporation, including ways to insulate the company's liability, employment issues, and corporate structure. Hittinger also prepared the Operating Agreement for Joliet Road Properties and CRCFR, of which Casa and her four brothers are members. Other than corporate contact with Hittinger, Casa recounts two other situations regarding interaction with Hittinger.

On July 15, 2004, Hittinger represented Karen Marshall in a real estate transaction with her daughter, Casa. This representation concerned checks issued as gifts to Casa's

children for a down payment on the real estate, and Hittinger sent a letter with the heading "Attorney-Client Privilege" and addressed it to both "Karen Marshall and Casa Marshall." In it, Hittinger recommended how they should execute the real estate contract in order to maximize tax benefits to Karen. Prior to this, Hittinger sent Karen a fee engagement letter dated May 25, 2004, confirming his representation. Hittinger did not send a similar letter to Casa or advise her to seek separate outside counsel. Karen Marshall recently filed a mortgage foreclosure action against Casa on the above property.

In addition, Casa and her business partner, Kathleen Erwin, went to Hittinger's office at Hoeppner seeking representation in forming a limited liability company for themselves. Hittinger expressly declined representation because the fees he would have had to charge to set up the new company outweighed any corporate benefit. Hittinger directed Casa and Erwin to the Indiana Secretary of State's website and emailed Kathleen a blank form of a sample Articles of Incorporation. Hittinger never charged a fee for this meeting and did not offer any legal advice.

On June 29, 2007, Casa was diagnosed with a brain tumor which required surgery on July 6, 2007. Casa's physicians instructed her to return to work six weeks after surgery. On July 24, Casa was issued an "Acknowledgment of Warning to Employee" for her missed time and instructed that it was in her "best interest to return to work." (Compl., Ex. C, Ex. D) Casa was terminated on January 10, 2008, which led to her claims in this cause of action.

Hittinger, who continues to represent G.E. Marshall as general counsel, filed an appearance in Porter County Superior Court after the initial claim was filed by Casa. Hittinger now is a partner in the law firm of Krieg Devault, LLP. Krieg Devault is the

firm charged with defending the claims against G.E. Marshall and the other defendants. Krieg Devault did not firewall or insulate Hittinger's contact with the current attorneys defending G.E. Marshall, Linda Cooley and Steven Lammers. On April 27, 2010, Casa filed a Motion to Disqualify Counsel, Kreig [sic] Devault, LLP.

Discussion

The Seventh Circuit has cautioned that disqualification is a prophylactic device employed to protect the attorney-client relationship and is a "drastic measure which courts should hesitate to impose except when absolutely necessary." ***Cromley v. Bd. of Ed. of Lockport Twp. High Sch. Dist. 205***, 17 F.3d 1059, 1066 (7th Cir.1994) (quoting ***Freeman v. Chicago Musical Instrument Co.***, 689 F.2d 715, 721 (7th Cir. 1982); *see also* ***Conn v. U.S. Steel Corp.***, 2009 WL 260955 * 4 (N.D. Ind. Feb. 2, 2009) (quoting ***Cromley***). The movant bears the burden of showing facts which would allow the court to grant a motion to disqualify counsel. ***Cardenas v. Benter Farms,*** 2001 WL 292576, * 1 (S.D. Ind. Feb. 7, 2001); ***Bogosian v. Bd. of Ed. of Cmty. Unit Sch. Dist. 200***, 95 F. Supp. 2d 874, 875 (N.D. Ill. 2000). A district court possesses broad discretion in determining the validity of a motion to disqualify counsel. ***Conn***, 2009 WL 260955 at *4; ***Cardenas,*** 2001 WL 292576 at *1.

"The Local Rules of this Court provide that the Rules of Professional Conduct as adopted by the Indiana Supreme Court, along with the Standards for Professional Conduct adopted by the Seventh Circuit, provide the standard of conduct for those practicing in this court." ***Conn***, 2009 WL 260955 at * 4 (citing N.D. Ind. Local Rule 83.5(f)). Indiana Professional Conduct Rule 1.9 states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in

> which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
> (1) whose interests are materially adverse to that person; and
>
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

"To determine whether an attorney has a conflict of interest with his or her client the Court first asks whether a substantial relationship exists between the subject matter of the prior and present representations." ***Jones & Henry Eng'r, Ltd. v. Town of Orland, Ind.,*** 942 F. Supp. 1202, 1206 (N.D. Ind. 1996). The inquiry involves three steps: (1) the trial judge must make a factual reconstruction of the scope of the prior legal representation; (2) it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. *Id.* (citing ***LaSalle Nat'l Bank v. County of Lake,*** 703 F.2d 252, 55-56 (7th Cir. 1983)).

"[T]he determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought." ***Jones & Henry Eng'r, Ltd.,*** 942 F. Supp. at 1206-07, (quoting ***Freeman***, 689 F.2d at 722 n. 10 (7th Cir. 1982). The Indiana Supreme Court relies on the facts of each case to determine if the issues in the prior and present cases are "essentially the same or are

5

closely interwoven therewith." *In re Robak,* 654 N.E.2d 731, 734 (Ind. 1995). There can be no substantial relationship where no attorney-client relationship existed. *See Hacker v. Holland,* 570 N.E.2d 951, 955 (Ind. Ct. App. 1991); *Schneider v. Wilson,* 521 N.E.2d 1341, 1345 (Ind. App. 1988).

Indiana state law allows an attorney-client relationship to be formed impliedly when it is not expressed otherwise. *Douglas v. Monroe,* 743 N.E.2d 1181, 1185 (Ind. App. 2001); *Matter of Kinney,* 670 N.E.2d 1294, 97-98 (Ind. 1996); *Hacker,* 570 N.E.2d at 955. The relationship is formed after both the attorney and the client have consented to its existence. *Matter of Kinney,* 670 N.E.2d at 1297. Therefore, a would-be client's unilateral belief, especially in civil cases, does not create an attorney-client relationship. *Compare Douglas,* 743 N.E.2d at 1186 (holding no attorney-client relationship formed where the attorney offered a statement concerning the statute of limitations on a matter because it was offered out of sympathy, not a desire to represent the woman), *Matter of Kinney,* 670 N.E.2d at 1297-98 (holding no attorney-client relationship formed where attorney helped woman answer interrogatories, attended her deposition, and appeared in court for her to secure a continuance because the attorney expressly declined to represent her and the attorney did not subjectively believe he was the woman's attorney), *and Hacker,* 570 N.E.2d at 955 (holding that attorney-client relationship was not formed and the attorney owed no duty to the individual where the attorney represented only one party to a real-estate transaction, prepared closing documents, and presided over the closing), *with* **In re Anonymous,** 655 N.E.2d 67, 70 (Ind. 1995) (holding relationship formed between the attorney and client after several meetings, legal advice tendered by the attorney, and a determination that a strong legal case existed for a wrongful termination

suit, and explaining that the attorney should have known that would-be client viewed him as his accepted counsel).

In this case, Casa contends three separate instances indicating that an attorney-client relationship existed between Casa and Hittinger and that this alleged relationship is substantially related to the matters at hand. Casa also argues that Krieg Devault's failure to insulate Hittinger has tainted the firm and its attorneys cureently representing G.E. Marshall and M5, Lammers and Cooley. The central issue is whether an attorney-client relationship was formed between Casa and Hittinger.

First, Casa claims an attorney-client relationship existed through Hittinger's representation as general counsel for G.E. Marshall, citing *United States v. Allen*, 2008 WL 3992234 (N.D. Ind., Aug. 22, 2008). In *Allen*, an attorney was forbidden from representing a township trustee in a matter adverse to the township after acting as counsel to the township. *Id.* at *4. However, unlike the facts of *Allen*, Hittinger represented the corporation and his duty was to the corporation, and he never attempted to represent its individual officers, shareholders, or members. *See Cutshall v. Barker,* 733 N.E.2d 973, 981 (Ind. App. 2000) ("[A] lawyer who is retained by a corporation represents that corporation acting through its duly authorized constituents.") (citing **Ind. St. R. Prof. Cond. 1.13**); *see also In re Consumers Power Company Derivative Litigation*, 132 F.R.D. 455, 475-76 (E.D.Mich.1990) (interpreting Michigan Rule of Professional Conduct 1.13, which is identical to Indiana's rule). At all times, Hittinger, both while at Hoeppner and later at Krieg Devault, represented the corporation only. In the current lawsuit, Hittinger has represented G.E. Marshall and M5, so no conflict exists because Hittinger never represented Casa's individual interests.

Second, Casa argues that Hittinger personally represented her during the real estate transaction between her mother and herself. Casa cites the letter addressed to both parties as evidence of Hittinger's representation. Hittinger addressed the letter to both Karen and Casa and included the heading, "Attorney – Client Privilete", which Hittinger avers mistakenly was added by an associate. Nothing other than that heading indicates that Hittinger represented Casa. Hittinger has explained that the letter was for the benefit of Karen only and that he was representing her interests as to tax benefits of the gift Karen was making. The content of the letter as a whole supports this explanation.[1] The letter directing Karen on the best method of transferring property to Casa in an effort to avoid gift taxes does not depict an attorney-client relationship between Casa and Hittinger. With this property transfer – as well as the other instances where Casa claims representation – there is a conspicuous absence of bills, payments, or discussion of legal fees between Casa and Hittinger. It is presumed that if such evidence existed it would have been brought to the court's attention. Although it is plausible that Casa regarded the letter as legal advice from Hittinger for her own benefit, an attorney-client relationship cannot be formed by the unilateral subjective belief of one party. ***Douglas,*** 743 N.E.2d at 1186.

Finally, Casa argues that an attorney-client relationship was formed with Hittinger during the initial consultation where she and Erwin sought his representation. In ***Matter of Kinney,*** the attorney expressly declined representation of the requesting party but did offer assistance to her in several legal matters including, interrogatories, depositions, and

---

[1] Casa mentions Hittinger's failure of his duty to advise her to seek her own counsel. However, finding that no attorney-client relationship established between Hittinger and Casa, no duty exised. *See **Hacker***, 570 N.E.2d at 955 ("Duty being the threshold requirement, a plaintiff must first prove the existence of an attorney-client relationship.").

appearing in court. However, no attorney-client relationship was established. *See* **Matter of Kinney,** 670 N.E.2d at 1297-98 (holding that there can be no finding of violation of the Rules of Professional Conduct without first establishing that the respondent actually represented the party).

Here, Hittinger expressly declined representation citing cost-benefit concerns. After indicating that the Casa and Erwin could create the company on their own, Hittinger emailed a sample Articles of Organization and directed Erwin to the Indiana Secretary of State's website. Hittinger's helpful gesture to Casa and Erwin does not trump his express refusal to represent them as an attorney, a point of contention not addressed in Casa's reply. Again, Casa has not carried the burden showing that an attorney-client relationship existed.

Finally, Casa alleges Hittinger and Krieg Devault violated Indiana Rules of Professional Conduct 1.10. The relevant sections of the Rule state:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2 . . . .
> . . .
> (c) When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9. . . . .

However, the prerequisite for proving violation of Rule 1.10 includes a showing of a past attorney-client relationship. *See* **Chapman v. Chrysler Corp.**, 54 F. Supp. 2d 864, 865 (S.D. Ind. 1999) (explaining first step in proving violation of Rule 1.10 is determining if there is substantial relationship between the past and present representations by the attorney). Here, there is no *past* representation of Casa by Hittinger, and without this prerequisite, Krieg Devault cannot have violated Rule 1.10.

_____

For the aforementioned reasons, the Motion to Disqualify Counsel, Kreig [sic] Devault, LLP [DE 44] filed by the plaintiff, Casa Marshall, on April 27, 2010, is **DENIED.**

ENTERED This 12th day of August, 2010.

/s/ Andrew P. Rodovich
United States Magistrate Judge