UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CASA MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO: 2:09-cv-198 APR |
| v. | ) |
| | ) |
| G.E. MARSHALL, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 151] filed by

the defendants, MBIP, LLC, Tower Road, LLC, CRCFR Properties, LLC, and Joliet Road

Properties, LLC, on December 16, 2013; the Motion for Summary Judgment [DE 153] filed by

the defendants Marie Marshall, Trustee of the Glen E. Marshall Marital Trust, and Karen

Marshall, Beneficiary of the Glen E. Marshall Marital Trust, on December 16, 2013; the Motion

for Summary Judgment [DE 155] filed by the defendants G.E. Marshall, Inc. and M5, Inc. on

December 16, 2013; the Motion for Partial Summary Judgment [DE 157] filed by the plaintiff,

Casa Marshall, on December 16, 2013; the Motion for Summary Judgment [DE 165] filed by the

defendants, Clinton E. Marshall, Frank A. Marshall, Roger W. Marshall, and Ross J. Marshall

(the Marshall Brothers) on December 16, 2013; the Motion to Seal [DE 168] filed by Casa on

December 16, 2013; the Motion for Hearing on the Motion for Summary Judgment [DE 170]

filed by the defendants on December 16, 2013; the Objection and Motion to Strike Portions of

Casa Marshall's Motion for Partial Summary Judgment [DE 172] filed by the Marshall Brothers

on February 12, 2014; the Motion for Hearing on Casa Marshall's Motion for Summary

1

Judgment [DE 181] filed by Casa on February 12, 2014; and the Motion for Leave to File Sealed Documents [DE 182] filed by Casa on February 12, 2014.

Based on the following reasons, the Motion for Summary Judgment [DE 151] filed by MBIP, Tower Road, CRCFR Properties, and Joliet Road Properties is **GRANTED**; the Motion for Summary Judgment [DE 153] filed by Marie and Karen Marshall is **GRANTED**; the Motion for Summary Judgment [DE 155] filed by G.E. Marshall and M5 is **GRANTED**; the Motion for Partial Summary Judgment [DE 157] filed by Casa Marshall is **DENIED**; the Motion for Summary Judgment [DE 165] filed by the Marshall Brothers is **GRANTED**; the Motion to Seal [DE 168] filed by Casa is **GRANTED**; the Motion for Hearing on the Motion for Summary Judgment [DE 170] filed by the defendants is **DENIED**; the Objection and Motion to Strike Portions of Casa Marshall's Motion for Partial Summary Judgment [DE 172] filed by the Marshall Brothers is **DENIED AS MOOT**; the Motion for Hearing on Casa Marshall's Motion for Summary Judgment [DE 181] is **DENIED**; and the Motion for Leave to File Sealed Documents [DE 182] filed by Casa is **GRANTED.**

*Background*

Glen E. Marshall, Inc. (GEMI) is a family-owned closely held corporation that provides sitework, excavating, and demolition services. Glen E. Marshall was GEMI's President and had sole power to make management decisions until he became ill and died in 2003. After Glen's death, his wife, Karen Marshall, became the beneficiary of the Glen E. Marshall Marital Trust, which held the majority of the GEMI stock. Marie Marshall, Glen's sister-in-law, became the trustee. The trust included a right to withdraw, which stated: "my wife may withdraw any part or all of the principal at any time or times. The trustee shall make payment without question

upon her written request. The right to withdraw shall be a privilege that may be exercised only voluntarily and shall not include an involuntary exercise." (Marie Aff. Ex. A)

Glen E. Marshall also bequeathed 3% of the stock to each of his children, Casa and the Marshall Brothers. Their interest increased to 5.66% in 2006. Casa and the Marshall Brothers voted both on their shares and the Marital Trust shares equally and served as the directors of the company.

Prior to her father's death, Casa was a truck driver at GEMI until the 1980s. She then performed secretarial work. Her duties included filing, paying bills, running payroll, preparing proposals, and signing contracts for small purchases. Following her father's death, Casa became the Office Manager and assumed responsibilities as Human Resources Director. In this role, Casa was responsible for hiring and training office staff and administering employee benefits. Specifically, she was in charge of drug-testing truck drivers, video-taping roads where services would be performed, maintaining employee records, obtaining licenses to conduct business, ensuring that truck drivers were licensed, making out charts or calendars for the yearly work, and preparing the Department of Transportation audits. GEMI also sent Casa to seminars that covered various topics, including the Family and Medical Leave Act and the Americans with Disabilities Act. Casa did not implement any of the FMLA or ADA procedures. Casa was a salaried employee during March 2007, and received the same annual salary and bonuses as the Marshall Brothers. GEMI approved all of Casa's raises.

Ross Marshall was hired at GEMI 3-4 years after Casa began working. Clinton began a few years after that, Frank 4 years after Clinton, and Roger started 2-3 years after Frank. The Marshall Brothers began as operating engineers running heavy equipment. The Marshall

Brothers later became and are now responsible for all aspects of revenue generation and management of GEMI, including finding new clients, maintaining client relationships, conducting site development, directing work crews, visiting and overseeing job sites, supervising machine shop and equipment maintenance, purchasing equipment, hiring and firing personnel, working with estimators, developing and submitting bids, attending bid meetings, reviewing contracts, and management all corporate activities.

Following their father's death, Casa and the Marshall Brothers served as the officers and directors of GEMI. They held weekly board meetings at which they made major company decisions about large equipment and real estate purchases, projects to bid, projects to lien, personnel decisions, and issuing dividends. Corporate dividends only were paid to owners, not employees.

Casa was elected as GEMI's Vice President and served in this capacity until December 2007. As a director, Casa and her brothers each had an equal vote on management decisions and had the authority to sign contracts and issue checks on behalf of the company. Casa often was out-voted by her brothers 4-1. However, on one occasion, Casa over-rode the vote not to hire an individual.

Casa became ill and went to the Mayo Clinic in Minnesota for treatment. She was scheduled for brain surgery in July 2007. Casa informed the Marshall Brothers that she needed medical leave a week or two before her surgery. Because GEMI did not have FMLA paperwork for its employees, Casa stated that the customary practice was for employees requesting medical leave to notify GEMI. Casa was off work during July and August 2007. Casa needed three weeks leave for hospitalization related to her surgery and an additional six weeks for

recuperation. She was prescribed medications and received physical therapy in Minnesota following her surgery. Her physical therapy continued when she returned to Valparaiso, Indiana. Her daughter, Jennifer Gudenschwager, assisted her during her recovery period.

On July 23, 2007, GEMI and the Marshall Brothers demanded a written release from Casa's doctor for her to return to work. The letter stated:

> The company wishes to be assured that it is in your best interest to return to work, and requests that you provide a written release or notification from your attending physician stating that your return to work is permitted by your physician, and stating any condition or limitation to your return, if any.

At the time Frank sent the letter, he already had taken steps to terminate Casa. On July 27, 2007, Casa's physician faxed a note to GEMI stating that Casa should be excused from work July 6, 2007 through August 13, 2007. Before GEMI received the doctor's note and knew Casa was not released to return to work, Frank told Casa that she must return to work or she would be fired. Casa did not return to work until September 4, 2007, and received paid medical leave through this date. Upon her return, Casa did not need help performing her duties, but she did purchase a signature stamp so she could sign GEMI checks because her signature "looked funny." (Casa Dep. p. 171) The Marshall Brothers did not approve her purchase of the stamp.

On July 23, 2007, the Marshall Brothers also issued Casa a warning, alleging that she had misappropriated corporate funds. The Marshall Brothers complain that Casa wrote corporate checks to her daughter, Jennifer, dated June 26, 2007 and July 3, 2007. Casa does not recall issuing checks to her daughter during June 2007. Jennifer testified that she does not recall doing work on GEMI property but that she did recall helping her mother while she was at Mayo Clinic and recuperating at home. Casa did not authorize anyone at GEMI to hire Jennifer, but Casa

testified that she "possibly" hired her.

During August 2007, while Casa was on FMLA leave, Frank had a GEMI employee write an attendance policy for GEMI. The policy concerning attendance stated that "[t]ardiness, absenteeism, or failure to report for work is unacceptable." (Pl.'s Dep. Ex. 1, p. 110-111) On August 13, 2007, GEMI received a letter from Casa's doctor that she was to remain off work until September 4, 2007 because of her ongoing recovery and rehabilitation. Casa returned to work on September 4, 2007, and resumed her job duties as Office Manager and Human Resources Director. When she returned, she learned that her check signing capability had been taken away. She also was provided with a copy of GEMI's new policies.

Because earth moving jobs frequently are done in the spring, summer, and fall, Casa and the Marshall Brothers made it a practice to take vacations during the winter and to draw their regular salaries while business was slow. During the winter of 2007-2008, Casa decided not to take her regular salary and instead worked on an hourly basis, reducing the amount of money GEMI had to pay her. During this time, Casa opened a gift shop.

Casa first expressed interest in selling her shares of GEMI and M5 in 2003. On October 10, 2007, Frank sent Casa a buyout offer to purchase Casa's shares for $750,000. The offer contemplated closing the transaction by December 31, 2007, required Casa to resign from her employment at GEMI and M5, Inc., and demanded that she forego any future interests in her mother's estate. GEMI had its monthly board meeting on December 4, 2007. At the meeting, the Marshall Brothers discussed the buyout previously offered to Casa. After Casa left the board meeting, she was removed as a member of the Board of Directors. After December 2007, the Marshall Brothers continued in their role as GEMI's officers and directors. The Marshall

Brothers received the same salary based on the principle of "equality." All management decisions continued to be made by a majority vote of Casa and her four brothers.

The Marshall Brothers allege that Casa had a history of not performing her work at GEMI since 2003, but did not issue her a warning about her performance until 2007. The Marshall Brothers explain that in addition to misappropriating corporate funds, Casa did not create employee policies for the company. During the Fall of 2007, Casa came into her brother's office with the Human Resources and Department of Transportation materials and threw them on a desk, announcing that "I'm not doing this shit anymore; you're going to have to do it." (Clinton Dep. p. 96-97) Another employee completed the Department of Transportation audit. Roger testified that the Marshall Brothers had discussed reducing Casa's salary amongst themselves, but did not do so. Roger stated that the Marshall Brothers first contemplated terminating Casa in early to mid-summer 2007, and were leaning toward terminating her.

On November 30, 2007, GEMI issued Casa a memorandum addressing her job performance. The memorandum stated that Casa did "not report to work during normal work hours, [did] not work the required number of hours per week, and [did] not complete or accomplish the work duties required of [her] position." (Casa Dep. p. 96, Ex. 4) The memorandum further stated that Casa's job performance was "very, very poor" and progressively had gotten worse. The company's efforts to discuss Casa's performance with her had "generally been always met with defensive and vulgar language." (Casa Dep. Ex. 4) The Marshall Brothers stated that Casa was at the office less frequently after they sent the buy-out letter and that she began forwarding human resource issues to Roberta Marshall, GEMI's Executive Administrator, because she did not want to deal with the issues. Casa also stopped

attending the weekly management meetings. The letter directed Casa to discuss her attendance and performance issues with Frank.

On January 10, 2008, GEMI issued Casa a certified letter listing their reasons for her termination. She was terminated on January 14, 2008 for failure to attend work and fulfill her work responsibilities. Casa did not believe that there was a problem with her performance. Casa believes she was disciplined and terminated by GEMI because her brothers told her she "was a piece of crap", "very greedy", "very money hungry", and because they did not "want to deal with a girl." (Casa Dep. p. 96) She further complains that she was treated differently because they did not allow her to criticize anything or make a suggestion, and she was told to "shut the fuck up". (Casa Dep. p. 188)

Following her termination, Jamie Marshall, Clinton's daughter, began to work for GEMI. Jamie created an employee handbook after she was hired that covered FMLA, time off, and sick leave procedures. Prior to Casa's termination, GEMI did not have any formal procedures.

Casa filed a charge of discrimination and violation of her rights under the FMLA with the EEOC on June 11, 2008. Around this time, Karen filed a foreclosure lawsuit against Casa and changed her will to disinherit Casa. Karen also sold her stock in GEMI to the Marshall Brothers on December 18, 2012. Neither Karen nor the Marshall Brothers gave Casa notice of the sale until after it had occurred. Karen stated that she did not discuss her decision to sell the stock with anyone. One of the reasons she did so was to eliminate any interest that might have belonged to Casa. Roger thought that a letter was sent to Casa to inform her that the shares were available to purchase, but he did not know the content of the letter, who sent it, or when it was sent.

The EEOC did not pursue Casa's charge, and she was issued a notice of the right to sue. Casa proceeded to file her complaint on June 16, 2009, alleging that GEMI terminated her in violation of her rights under the Family Medical Leave Act and discriminated against her based on her gender and disability. She further alleged that Karen, as beneficiary of the trust, Marie, as trustee, and the Marshall Brothers violated their fiduciary duties by failing to inform her of the sale of Karen's shares. Casa also complained that the Marshall Brothers breached their fiduciary duties by forming MBIP, LLC, Tower Road, LLC, CRCFR Properties, LLC, and Joliet Road Properties, LLC, without including her. Casa made a written demand that her interest in these corporations be purchased. The corporations filed a declaratory judgment action, and the court determined the amount Casa was to be paid for her interest. Casa has been paid for her interest in CRCFR and Joliet.

The defendants now move for summary judgment on all of Casa's claims, and Casa moves for partial summary judgment.

*Discussion*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23, 106 S. Ct. 2548 , 91 L. Ed. 2d 265 (1986); **Kidwell v. Eisenhauer,** 679 F.3d 957, 964 (7th Cir. 2012); **Stephens v. Erickson**, 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. **Adickes v. S.H. Kress & Company**, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed.2d 142, 155 (1970); **Stephens**, 569 F.3d at

786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Stephens***, 569 F.3d at 786; ***Wheeler v. Lawson***, 539 F.3d 629, 634 (7th Cir. 2008). However, summary judgment may be entered against the non-moving party if it is unable to "establish the existence of an essential element to [the party's] case, and on which [that party] will bear the burden of proof at trial . . .". ***Kidwell***, 679 F.3d at 964 (citing ***Benuzzi v. Bd. of Educ***., 647 F.3d 652, 662 (7th Cir.2011) (quoting ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. ***Ashman v. Barrows***, 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. ***Wheeler***, 539 F.3d at 634 (citing ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986)).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under
> Federal Rule of Civil Procedure 50(a), which is that the trial judge
> must direct a verdict if, under the governing law, there can be but one
> reasonable conclusion as to the verdict.
>
> *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S. Ct. 2505,
> 2511, 91 L.Ed.2d 202, 212 (1986).

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc*.**, 530 U.S. 133, 149-51, 120 S.Ct. 2097, 2109, 147 L. Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); ***Celotex Corp***., 477 U.S. at 322-23, 106 S. Ct. at 2553; ***Stephens***, 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008)(stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Durflinger,*** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Casa attempts to mold this dispute into a modern Cinderella story by demonstrating that she was shunned from her family following her father's death. She complains that her brothers did not visit her at the hospital, that her mother foreclosed on her house, and that her aunt was not always helpful to her. Putting the family disputes aside, the court must assess the actions of the parties as they relate to the family business — a line that the parties often blur in their briefs.

To begin, MBIP, LLC, Tower Road, LLC, CRCFR Properties, LLC, and Joliet Road Properties, LLC, filed a motion for summary judgment. Casa did not respond, and therefore has waived her opportunity to dispute their contentions and has not shown that there is a genuine issue of material fact. *See* ***Hernandez v. Cook County Sheriff's Office***, 634 F.3d 906, 913 (7th Cir. 2011); ***Palmer v. Marion County***, 327 F.3d 588, 597 (7th Cir. 2003); ***Laborers' Intern. Union of North America v. Caruso***, 197 F.3d 1195, 1197 (7th Cir. 1999); ***Wright v. United States***, 139 F.3d

551, 553 (7th Cir. 1998). Casa's claims against these entities stem from a breach of fiduciary duty. However, she was not a member of these corporations and has not demonstrated that they owed her or breached a corresponding fiduciary duty. Rather, the record reflects that any claim she had against these companies has been settled in the previous declaratory judgment action. For these reasons, the motion for summary judgment filed by MBIP, LLC, Tower Road, LLC, CRCFR Properties, LLC, and Joliet Road Properties, LLC, is **GRANTED**.

Casa alleges a series of employment discrimination practices by GEMI and the Marshall Brothers, all of which turn on whether Casa was an employee or an employer of GEMI. The applicable statutes, Title VII of the Civil Rights Act, 42 U.S.C. §2000e-2(a)(1), the Americans with Disabilities Act, 42 U.S.C. § 12112(a), and the Family Medical Leave Act, 29 U.S.C. § 2612, all provide protection to employees but not to employers. *See e.g. **Smith v. Castaways Family Diner***, 453 F.3d 971, 986 (7th Cir. 2006)(explaining that Title VII does not protect employers). The parties dispute whether Casa was an employee because she was a shareholder in the company and voted on business decisions.

Title 42 U.S.C. § 2000e(f) defines an "employee" as an individual employed by an employer. The term employee is to be construed broadly. ***Chavero v. Local 241***, 787 F.2d 1154, 1156 (7th Cir. 1986). An employer "is the person, or group of persons, who owns and manages the enterprise." ***Clackamas Gastroenterology Associates, P.C. v. Wells***, 538 U.S. 440, 449-450, 123 S.Ct. 1673, 1680, 155 L.Ed.2d 615 (2003). "The employer can hire and fire employees, can assign tasks to employees and supervise their performance, and can decide how the profits and losses of the business are to be distributed." ***Clackamas***, 538 U.S. at 450; 123 S.Ct. at 1680. "'Employers' are those whose authority and interests are so aligned with the business as to render them the legal

personification of the business, i.e., principals rather than agents." **Smith**, 453 F.3d at 978.

Shareholders and directors generally are employers rather than employees. *See* **Chavero**, 787 F.2d at 1156; **E.E.O.C. v. Dowd & Dowd, Ltd.**, 736 F.2d 1177, 1178 (7th Cir. 1984); **Burke v. Friedman**, 556 F.2d 867, 869 (7th Cir. 1977) (partner in accounting firm is employer not employee under Title VII); *but see* **Gorman v. North Pittsburgh Oral Surgery Associates, Ltd.**, 664 F.Supp. 212, 214 (W.D. Pa. 1987). This is particularly true of directors and shareholders who are inactive in the company. However, title alone does not dictate the outcome. **Clackamas**, 538 U.S. at 450, 123 S.Ct. at 1680. The primary consideration is whether an employer-employee relationship exists. The court must determine whether the individual performed typical employee duties such as maintaining records, preparing financial statements, and managing the office. *See* **Chavero**, 787 F.2d at 1157 (citing **E.E.O.C. v. First Catholic Slovak Ladies Association**, 695 F.2d 1068, 1070 (6th Cir. 1982)). The principal guidepost is whether the individual has control of the business or is subject to the right to control by the master. **Smith**, 453 F.3d at 977. The court must apply the following six factors to determine if a shareholder-director is an employee:

    1. Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
    2. To what extent the organization supervises the individual's work;
    3. Whether the individual reports to someone higher in the organization;
    4. Whether the individual is able to influence the organization;
    5. Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and
    6. Whether the individual shares in the profits, losses, and liabilities of the organization.

**Clackamas,** 538 U.S. at 450, 123 S.Ct. at 1680. No one factor is decisive in determining whether an individual is employee. **Clackamas,** 538 U.S. at 450, 123 S.Ct. at 1680.

The Seventh Circuit has set boundaries for the application of the **Clackamas** six-factor test. **Ruiz v. Trustees of Purdue University**, 2008 WL 833125, *8 n. 1 (N.D. Ind. Feb. 20, 2008). In

*Smith*, the court distinguished an employer from a supervisor vested with authority. *Smith*, 453 F.3d at 978. The Seventh Circuit explained that the source of control dictates how an individual is classified. *Smith*, 453 F.3d at 978-979. The question the court must address is whether the individual has the right to control rather than the privilege, even if she chooses not to exercise that right. *Smith*, 453 F.3d at 980, 982. *See also* **Restatement § 2(1)** ("A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of others in the performance of the service."). If the control is delegated from the owner to the individual, even such tasks as preparing the individual's schedule, writing checks, establishing policies and procedures, and hiring and firing employees, the individual is not an employer. The court placed significant emphasis on the right to bring decisions to a vote or the right to dissolve the business.

Although an employer's preferences may not always be followed in cases where a business is jointly owned, this does not strip the individual from her designation as an employer. The key appears to be whether the individual had a say in the decisions of the business and possessed an equal vote. *Smith,* 453 F.3d at 983. The right to vote in affairs does not enable an owner to impose her own will on the organization, but the status entitles the individual to a say in fundamental decisions of the business that other workers do not enjoy. *Smith*, 453 F.3d at 984.

Applying the factors above, the record is clear that GEMI had the authority to fire Casa, as displayed by her termination. However, the record does not reflect similarly that GEMI had significant control over Casa's work. Casa set her own hours, determined when to take vacation without approval, unilaterally reduced her hours and took pay on an hourly basis, and determined what tasks she would perform. Casa passed off some tasks, such as the DOT audit, to other

employees.  Casa also chose not to create policies for the company, including FMLA leave and attendance policies, although it fell within her authority as Human Resources Director.  Casa over-rode her brothers to hire an employee, issued corporate checks without authorization from the Marshall Brothers, and ordered a signature stamp without approval.  She does not argue that she had to report to anyone higher in the organization. These actions all indicate that she was an employer rather than an employee.

Inconsistent with this conclusion is the fact that Casa was terminated in part for her decision to work on a part-time hourly basis during the winter.  Casa also was subject to review by the Marshall Brothers, as indicated by the letters they sent regarding her performance and the one performance review issued by her brothers, which stated that they attempted to discuss her conduct with her on more than one occasion.  This suggests that Casa did not have sole discretion to make up the terms of her employment.  However, this does not mean that she was an employee.  Most corporate governance structures would allow for the other shareholders to vote out a member who was not performing her duties.

The Seventh Circuit appears to place the most emphasis on the individual's ability to influence the company.  Although Casa argues that her control was illusory because her brothers out-voted her on all matters, this does not dictate whether she was an employer.  The controlling issue is whether she was given the same authority to influence the management decisions as the Marshall Brothers, and here the record clearly reflects that they maintained the same voting power even after Karen sold her shares to the Marshall Brothers.  This is a power that employees who were not shareholders did not enjoy.  She also shared in GEMI's profits when the Marshall Brothers and she voted to issue a dividend, which other employees did not receive.  Casa unilaterally hired some

employees, signed checks, and was tasked with creating company policies, all factors which indicate her ability to control the company. Although she often was out-voted, this does not negate the fact that she had authority and rights that exceeded that of a typical employee. Her ownership, coupled with her authority, reflect that she was an employer rather than an employee.

Casa also argues that judicial estoppel bars the defendants from challenging whether she was an employee because they did not raise it with the EEOC or before filing their motions for summary judgment. Specifically, the defendants admitted in their motion to dismiss that Casa, like each of them, was an employee, officer, and shareholder. The Marshall Brothers similarly stated in their motion for summary judgment that they remained employees and officers of the company and that Casa's employment was terminated on January 14, 2008. Casa argues that the defendants made numerous statements over the past six years admitting that Casa was employed by GEMI.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). The purpose of the doctrine of judicial estoppel is to protect the integrity of the judicial process from parties changing their positions throughout litigation. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 152 L.Ed.2d 944 (2001). To expand, "[t]he policies underlying the doctrine [of judicial estoppel] include preventing internal inconsistency, precluding litigants from 'playing fast and loose' with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993). *See also New Hampshire*, 532 U.S. at 750, 121 S.Ct. at 1808. The court generally considers several

factors when determining whether to apply judicial estoppel: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party prevailed in persuading a court to accept the party's earlier position; and (3) whether the opposing party would be unfairly disadvantaged if the party asserting the inconsistent statement was not estopped. *New Hampshire*, 532 U.S. at 750–51, 121 S.Ct. at 1808.

Although Casa argues that the defendants admitted that she was an employee in their motion to dismiss, "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determination'". *New Hampshire*, 532 U.S. 742, 750-751 (citing *United States v. C.I.T. Constr. Inc*., 944 F.2d 253, 259 (5th Cir. 1991)). The issue of Casa's status as an employer or employee never was presented to the court previously. The defendants did not raise this issue in their earlier motions or with the EEOC, and therefore never succeeded in taking the position that Casa was an employee. Nor is it likely that the defendants ever would have argued that Casa was an employee because such an argument clearly was inconsistent with their position throughout the entirety of this litigation. Casa has failed to show that the defendants either took a "clearly inconsistent" position at an earlier stage or that they succeeded in doing so. Rather, the record reflects that this issue never was raised until the defendants filed their motions for summary judgment.

In addition, Casa has not shown that she would suffer prejudice if the defendants were permitted to maintain their position that she was not an employee. Generally, judicial estoppel is not applied unless the party taking the inconsistent position received some benefit or unfair advantage as a result. **28 Am. Jur. 2d Estoppel and Waiver § 68.** There is no conceivable advantage the defendants would have gained by arguing that Casa was an employee, nor has Casa

demonstrated that the issue was raised in such an untimely matter as to cause her prejudice. Casa had an opportunity both in her reply in support of her motion for summary judgment and in response to the defendants' motions for summary judgment to explain why she should be considered an employee for purposes of applying the various employment statutes. For all of these reasons, judicial estoppel does not apply to preclude the defendants from arguing that Casa was not an employee.

Because judicial estoppel does not bar the defendants from arguing that Casa was an employee and the defendants have succeeded in demonstrating that Casa had sufficient control of the company to remove her from the protection of Title VII, the FMLA, and the ADA, the court **GRANTS** the defendants' motions for summary judgment and **DENIES** Casa's motion for summary judgment on her Title VII, ADA, and FMLA claims.

Casa also alleges that the defendants breached their fiduciary duties by failing to inform her that additional stock was available to purchase when Karen sold her shares to the Marshall Brothers. The defendants argue that they did not owe Casa a fiduciary duty. The Marshall Brothers also moved to strike Casa's argument in its entirety, arguing that Casa did not include a claim challenging the stock sale and purchase that took place on December 18, 2012.

The law is clear that shareholders in a closely held corporation owe each other a fiduciary duty. *Melrose v. Capitol city Motor Lodge, Inc*., 705 N.E.2d 985, 990 (Ind. 1998); *Krukemeier v. Krukemeier Mach. & Tool, Co.,* 551 N.E.2d 885, 888 (Ind.Ct.App.1990); *Cressy v. Shannon Continental Corp*., 378 N.E.2d 941, 945 (1978). This duty is extended to directors of closely held corporations, however, "this shareholder fiduciary duty is limited when a director-shareholder buys or sells corporate stock for his own account." *Hardy v. South Bend Sash & Door Co., Inc*., 603

N.E.2d 895, 900 (Ind. App. 1992).

Although directors owe a fiduciary duty to the corporation and its shareholders, "where a director or officer of a corporation sells his personal shares of stock or buys stock from other shareholders for his personal ownership, and such sale does not affect the general well being of the corporation, the director owes no fiduciary duty to disclose the terms of such sale to other shareholders." *Yerke v. Batman*, 376 N.E.2d 1211, 1214 (Ind. App. 1978). As a director, the individual holds the stock free from the dominion and control of the other directors and shareholders. "[N]o fiduciary relationship exists between an officer or director and the stockholders of the corporation when, in the absence of fraud or general detriment to the corporation, that officer or director buys or sells his personal stock". *Yerke*, 376 N.E.2d at 678. *See also Hardy*, 603 N.E.2d at 900 (explaining that "this shareholder fiduciary duty is limited when a director-shareholder buys or sells corporate stock for his own account."). The *Yerke* court concluded that the directors did not owe a fiduciary duty to the minority shareholders to notify them that the sale of the majority of shares was about to take place or to allow the minority shareholders the opportunity to participate equally in the majority stock sale.

Karen owned the stock that was sold. She was not a director of GEMI and could not have owed a fiduciary duty under this theory. Although the Marshall Brothers were directors, their purchase of the stock was a personal decision that did not affect the company as a whole. Casa has not demonstrated that the Marshall Brothers, as directors, owed her a fiduciary duty to disclose the sale and to allow her to purchase additional shares. Such a requirement would be inapposite of *Yerke* and would impose an unprecedented duty on the Marshall Brothers.

However, the fiduciary duties owed to a fellow shareholder in a closely held corporation

exceed those of a director if the shareholders intended to treat their ownership as a partnership and share in the company equally. Casa refers the court to *Cressy,* arguing that the parties intended their ownership to be based on the principle of equality, and for that reason the sale of the stock should have been disclosed. In *Cressy*, two individuals formed a close corporation, agreed to be fifty-fifty partners, and became the majority shareholders. *Cressy*, 378 N.E.2d at 945. One sold some newly issued stock to his parents, and the other bought some stock from a minority shareholder. Both sought to void the other's transaction. The court explained that "[t]he 'partnership' expectation of equality of shareholdings carried with it the duty on the part of each principal to disclose to the other the availability of outstanding shares for sale and to afford the opportunity to share in the purchase of such stock." *Cressy*, 378 N.E.2d at 945. The court "recognized that individuals who form close corporations 'often expect to act and to be treated as partners in their dealings among themselves.'" *Maul v. Van Keppel*, 714 N.E.2d 707, 710 (Ind. App. 1999) (citing *Cressy*, 378 N.E.2d at 945).

The Indiana Appellate Court later qualified *Cressy*, explaining that "[i]ntegral to the *Cressy* rationale is an agreement or meeting of the minds among shareholders." *Maul*, 714 N.E.2d at 711. "[T]he law provides ample methods for shareholders to maintain equal ownership should they so desire including buy-sell agreements, stock transfer restrictions, and the like. Where the shareholders in a close corporation have not entered into such contracts, the courts should be reluctant to impose contractual obligations on them." *Maul*, 714 N.E.2d at 710. Any departure from corporate law is warranted only when the shareholders agree to bind themselves to partner-like conduct and each shareholder intended to treat the others like equal partners. *Maul*, 714 N.E.2d at 711.

In *Maul*, the mother bequeathed equal shares of stock to each of her daughters. *Maul*, 714

N.E.2d at 711.  Although the mother may have intended for her daughters to maintain equal shares, this did not speak to the intent of the daughters to maintain equal ownership.  *Maul*, 714 N.E.2d at 711.  There must be some evidence of mutual intent among the shareholders to maintain equal ownership.  The *Maul* court examined the corporate resolutions and the testimony of the shareholders, and found that there was no evidence suggesting that the daughters agreed among themselves to maintain equal ownership.

The parties dispute whether they intended to maintain equal ownership.  Casa refers to Roger's testimony that all of the Marshall Brothers received the same pay to maintain equality.  However, it is not clear that this is enough to prove the intent to maintain equal ownership.  To begin, *Cressy* involved a situation where the individuals formed the corporation and agreed to share in the business "fifty-fifty".   Casa and her brothers inherited the shares and did not have an agreement to share the business equally.  Even if their father intended for them to share in the company equally, his intent cannot be substituted for the intent of the children.

More convincingly, Casa and the Marshall Brothers were minority shareholders, and their mother controlled the majority share and did not receive a salary equal to the Marshall Brothers and Casa.  Casa has pointed to no evidence to show that Karen had a meeting of the minds with Casa and the Marshall Brothers to share the company equally.  The evidence appears to suggest otherwise.  The trust that gave Karen her ownership interest specifically stated that she could withdraw the principle without any further inquiry.  The document itself shows that Karen could do with the shares what she chose.  There was nothing implicit in the document that required her to divide the shares equally among her children or to give them the right to first refusal.  Therefore, even if Casa and the Marshall Brothers intended to share the company equally, there is no evidence that Karen,

the owner of the shares, shared in that agreement and was obligated to offer them to all of her children.

Additionally, the statement Casa points to in support of her argument does not suggest an intent to own the company equally. The Marshall Brothers may have intended to have equal pay for the sake of fairness, but that does not reflect that they intended to maintain ownership equally. Rather, they could have agreed to equal pay because they held the same ownership interest. The law provides avenues for parties to formally agree to maintain equal ownership, such as contracting for a right to first refusal. However, the parties never entered such an agreement, and Casa has not pointed to any evidence to show that it was the parties' intent to share in the company equally.

Based on the foregoing reasons, the Motion for Summary Judgment [DE 151] filed by MBIP, Tower Road, CRCFR Properties, and Joliet Road Properties is **GRANTED**; the Motion for Summary Judgment [DE 153] filed by Marie and Karen Marshall is **GRANTED**; the Motion for Summary Judgment [DE 155] filed by G.E. Marshall and M5 is **GRANTED**; the Motion for Partial Summary Judgment [DE 157] filed by Casa Marshall is **DENIED**; and the Motion for Summary Judgment [DE 165] filed by the Marshall Brothers is **GRANTED**. The defendants' motions for summary judgment addressed all of the plaintiff's claims. Judgment is to be entered in favor of the defendants.

Because the court has decided the motions on the briefs, the motions for a hearing on the motions for summary judgment [DE 170 & 181] are **DENIED.**

The Marshall Brothers' Objection and Motion to Strike Portions of Casa Marshall's Motion for Partial Summary Judgment [DE 172] is **DENIED AS MOOT.**

ENTERED this 14th day of April, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge